# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| ANA MARIA CHAMBERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. CV-04-PT-03331-M |
| | ) |
| MERRILL LYNCH & COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This cause comes on to be heard upon defendant Merrill Lynch, Pierce, Fenner & Smith Inc.'s Motion to Compel Arbitration and for Stay Pending Arbitration, filed on December 6, 2004.

## FACTS AND PROCEDURAL HISTORY

Plaintiff Ana Maria Chambers ("Chambers") is a citizen of the State of Alabama. (Notice of Removal ¶ 7). Defendant Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch") is a Delaware corporation with its principal place of business in New York. (*Id.* at ¶ 8). Prior to his death on January 14, 2002, Chambers' husband, C. Gerome Chambers, held an IRA account (number 525-70L00) with Merrill Lynch. Defendant asserts that Chambers also held a joint account (number 525-24810) with her husband at Merrill Lynch.

Chambers alleges that Merrill Lynch refuses to issue the proceeds of her late husband's IRA account to her as the named beneficiary on the account. According to Chambers, Merrill Lynch delivered a check to her for the proceeds, but then stopped payment and informed her that

1

there had been a change of beneficiary. Chambers asserts that Merrill Lynch delivered to her a beneficiary change form, purportedly signed by C. Gerome Chambers, which eliminated her interest in the IRA account. Chambers alleges that the form is a forgery.

Chambers filed this action in the Circuit Court of Etowah County, Alabama on October 29, 2004.[1] Merrill Lynch removed the action to this court on November 29, 2004.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") was designed "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Paladino v. Avnet Computer Techs., Inc.* 134 F.3d 1054, 1057 (11th Cir. 1998)

---

[1] Plaintiff's Complaint contained one count which states as follows:

> Defendant is a corporation doing business in Etowah County, Alabama.
>
> Prior to January 14, 2002, the defendant held an IRA account in the name of C. Gerome Chambers who had in said account the sum of $452,000.00.
>
> The plaintiff was the named beneficiary of said IRA account in the event of the death of C. Gerome Chambers.
>
> On the 14th day of January, 2002, C. Gerome Chambers died.
>
> Plaintiff gave the defendant notice of the death of C. Gerome Chambers and the plaintiff made claim for the amount due under the IRA account. The defendant first paid the plaintiff the proceeds but then stopped payment on the check proceeds.
>
> Defendant has refused or failed to pay the plaintiff the monies due under said IRA account.

The Complaint seeks judgment against the defendant in the sum of $452,000.00, plus interests and costs.

(internal quotations and citations omitted). The FAA does not "require parties to arbitrate when they have not agreed to do so, ... nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement." *American Express Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 940 (11th Cir. 1997) (citations omitted). However, "the FAA creates a presumption in favor of arbitrability; so, parties must clearly express their intent to exclude categories of claims from their arbitration agreement." *Paladino,* 134 F.3d at 1057. Nonetheless, "courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties." *Goldberg v. Bear, Stearns & Co.*, 912 F.2d 1418, 1419-20 (11th Cir.1990).

## ARGUMENTS

I. **Defendant's Motion.**

Defendant asserts that arbitration is the appropriate forum for resolving plaintiff's claims. According to defendant, plaintiff is bound by a pre-dispute arbitration agreement to which her husband agreed with respect to the IRA account at issue. Further, defendant argues, plaintiff is also bound by an arbitration agreement that she entered into with defendant in connection with opening joint account number 525-24810.

Defendant maintains that C. Gerome Chambers executed an IRA/IRRA/SEP/SRA Adoption Agreement when he opened the IRA account number 525-70L00. Defendant also contends that, by signing the above referenced agreement, C. Gerome Chambers acknowledged that he had received a copy of defendant's Customer Agreement and agreed to be bound by the terms and provisions of the Customer Agreement, which include an arbitration clause. Defendant notes that immediately above C. Gerome Chambers' signature on the Adoption Agreement, it states in bold print: "I am

agreeing in advance to arbitrate any controversies which may arise with [defendant]."

Additionally, defendant asserts that, on February 26, 1997, plaintiff and her husband executed an agreement relating to joint account number 525-24810. Immediately above Plaintiff's signature on that form is the following language, in bold and all capital letters:

> By signing this agreement, the undersigned acknowledges (1) that, in accordance with paragraph 13, the undersigned is agreeing in advance to arbitrate any controversies that may arise with you . . .

Further, defendant draws the court's attention to paragraph 13 of the above mentioned agreement signed by plaintiff, which states as follows in bold type:

> The undersigned agrees, that all controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on, or subsequent to the date hereof, shall be determined by arbitration. . . .

Defendant also contends that plaintiff entered into an Option Agreement with Merrill Lynch that contained an arbitration clause. Above plaintiff's February 26, 1997 signature on the Option Agreement is the following language, in all capital letters and in bold type:

> I/We agree that all controversies which may arise between us, including, but not limited to, those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration. Any arbitration under this agreement shall be conducted only before the New York Stock Exchange, Inc., the American Stock Exchange, Inc., or arbitration facility provided by any other exchange, the National Association of Securities dealers, Inc., or the Municipal Securities Rulemaking Board, and in accordance with its arbitration rules then in force. . . .

It is defendant's position that all of the claims asserted by plaintiff against Merrill Lynch in this action are subject to the arbitration agreements quoted in the foregoing paragraphs, the terms of which specifically apply to the dispute at issue. Defendant asserts that the arbitration agreements

4

at issue are contracts evidencing transactions involving interstate commerce and, therefore, are subject to the provisions of the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. The fact that the lawsuit arises out of securities transactions is, according to defendant, sufficient to satisfy the intestate commerce requirement. *See Lewis v. Oakley,* 847 So.2d 307, 325 (Ala. 2002) (finding that transaction evidenced by stockbroker's signature on registration form involved interstate commerce). Defendant further points out that it is a Delaware corporation and its principal place of business is in New York, New York, while plaintiff is an Alabama resident. Given this, defendant argues the interstate commerce requirement is clearly satisfied.

Defendant maintains that the FAA reflects a strong federal policy favoring the arbitration of disputes, and this policy has been reinforced by the courts. *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985) (noting that the FAA "leaves no room for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed"). Thus, defendant concludes, there is a strong presumption in favor of arbitrability, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24-25 (1983).

Given these arguments, the defendant asks that this court enter an order compelling arbitration and staying all further proceedings in this action until arbitration has been completed in accordance with the terms of the applicable arbitration agreements.

## II.     Plaintiff's Response.

Plaintiff asserts that she has no information and no paperwork about the disputed IRA account except the photostatic copy of the alleged change of beneficiary form. Plaintiff

acknowledges that she does not know whether or not the account is subject to compulsory arbitration. Plaintiff asserts that Merrill Lynch is in possession of the relevant documents and has not provided her with copies despite her filing of interrogatories and a motion to produce when the action was originally brought in State court. Plaintiff asks that the court order Merrill Lynch to produce copies of its records concerning the IRA account, a copy of the original beneficiary card, a copy of any signatures of plaintiff's listed in defendant's records, a copy of the check issued to plaintiff, and a copy of any alleged arbitration agreement.

### III. Defendant's Reply.

Defendant argues that plaintiff's assertion that Merrill Lynch has failed to furnish her with copies of the relevant documents is unavailing, given that defendant attached copies of the documents to its Motion to Compel Arbitration, a copy of which was provided to plaintiff. Defendant reiterates the arguments asserted in its Motion.

## CONCLUSIONS OF THE COURT

This court is of the tentative opinion that defendant's Motion to Compel should be denied for one or more of several reasons. These include:

(1) Plaintiff was not a party to the 525-70L00 agreement and, apparently, the dispute does not involve the manner in which that account was administered, but simply whether the plaintiff is or is not the beneficiary.

(2) The court sees no reason that the 525-24810 agreement changes what is discussed in (1) above. The <u>plaintiff</u> did not have another agreement before or after the 525-24810 agreement.

(3) The court does not see what could be accomplished in arbitration in the absence of the

purported substituted beneficiary.

(4) The court questions whether arbitration agreements, in general, cover such claims involving disputed beneficiaries in the absence of a clear statement to that effect in an agreement to which the claimant is a party.

The court will not make a final decision until the parties have provided the court with highlighted copies of purported controlling cases.  The defendant's attorneys are reminded of their duty to provide the court with cases which arguably are contrary to their position.[2]  The parties will submit such cases and any further argument within fifteen days.

This 7th of January, 2005.

*/s/ Robert B. Propst*
**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[2] Of course, so is plaintiff's attorney, but defendant's attorneys may be in a more knowledgeable position.  The court seems to recall case(s), perhaps recent, which reject defendant's position.  The court assumes that plaintiff has copies of the agreements.  The defendant should highlight the applicable controlling provisions of any agreements that bind the plaintiff in such a situation as this.